McAllister. Good morning. If it pleases the court, I'm Alistair McAllister, attorney for the petitioner-appellant Andrew Martin. This case is, of course, a case that must stand or fall now on ineffective assistance of counsel. And we've submitted several points in which we contend that ineffective assistance of counsel was rendered. Perhaps first and foremost is that this man's failure of the counsel to investigate his suspected mental condition. And I might say, of course, that we have one of the problems, of course, in a case like this is since there was no evidentiary hearing, we're forced to rely on allegations or matters in the record, in the state record and so forth. Here we have not only the petitioner's allegations regarding his mental condition, but we have this largely based on the Yuba County Jail medical records, which indicated that he's been pretty much of a kind of a mental mess, you might say, since he was at least 16. He's had problems with heroin, suffered from heroin and opiate withdrawal, used heroin since he was 16, has body tremors, has thought of hurting himself, constant hunger, sugar craving, was under considerable medication in January of 99 in jail. And at the Marsden hearing, trial counsel said the court, told the court that petitioner had seemed distraught. So now we have arguments of what that meant, what the distraught is really just a, is really a meaningful word or not. But this man did have serious problems. And it does not appear, it does not appear that his counsel ever gave this very serious attention. Yet we do have an abundance of state and federal constitutional principles and litigation that basically hold that competent representation includes investigating the possibility that a client's intoxication or mental condition or drug reliance or whatever prevented formation of the intent required to do whatever it was that was at stake. And in this case, the intent to make a competent plea of guilty. Mr. McAlister, when you refer to the Yuba County jail records, as I understand it, he was admitted to the jail five months prior to the time that the plea was taken. Is that correct? That's about correct, Your Honor. Close to five, maybe four. I assume he had been detoxed during that period by virtue of his continual incarceration for that period of time. Well, that may well be. I don't know that the records exactly reflect that. They may, but I. I mean, one would hope that he was not still a heroin addict while he was in the custody. Well, I suppose I wouldn't furnish him with heroin, no. I hope not. No, no. All right. No, sir. I guess the question then becomes, you know, this is not an uncommon situation where a person with a drug addiction problem is incarcerated and we've got a five-month delay before he enters his plea. So I'm trying to determine from your reference to the records, what more do we have as to what his mental condition was on the day that he entered the plea? I mean, we've got the colloquy, which seems pretty straightforward. He seemed to be responding in a comprehensive fashion to the judge's question. Do we have any other evidence in the record to suggest that he was physically or mentally not capable of understanding and entering a free and voluntary plea on that day? I think the strongest evidence is the Yuba County medical records from the jail. We also, of course, have the. . . You keep saying that, but I guess let me ask you specifically then, what entry in the Yuba County jail records on or about the date of the plea would you cite us to? No, no. Not as of the date of plea. No, Your Honor. All right. So you are going back to the observations that were made presumably by the jail nursing staff on the day that he. . . We must rely primarily on that, although there was also a Marston hearing much closer to that at which time the trial counsel told the court that Petitioner had seemed distraught and, in fact, was sobbing. Well, had been recently sobbing. But that's all we have on that. And what was the time lag between the date of the Marston hearing and the date of the plea? Well, the Marston hearing, I think, was just a few days before the plea. I know it was just a very few days before. On June 9, 1999, the Yuba Superior Court denied his Marston motion, and on June 11, he entered his negotiated plea. Was the court's entry on the same day as the hearing, or did the order issue after the hearing? I think the court's denial. . . Well, the court's denial, all I can tell you is these various records indicate that was on June 9, and then his plea was entered on June 11. Do we have the record of the colloquy at the time of his plea of the questions the judge asked him and all of the answers? Yes. Yes, Your Honor. I think we do. There's quite a – even in California, which may be primitive, the judge asks a lot of questions about are you suffering from any mental difficulties or any substances or any – and are you – has it all been explained to you about your rights and all this stuff? And they try to talk him out of it, and then he pleads guilty. I don't think we can quarrel with the colloquy, Your Honor. Of course, if a person isn't confident to answer those questions, I'm not sure what the colloquy necessarily proves, but I can't fault the colloquy. Well, he answers affirmatively that he's okay and he's ready to plead. One who's not confident might answer that until there'd be a question of whether that was the right answer. You mentioned his – somebody saying he was distraught. Anybody facing a third-strike felony charge is likely to be distraught, even though – There's no doubt about that.  No question about that, Your Honor. But I would submit that the counsel fell down by not pursuing this question. I mean, you've got enough evidence of mental problems, and we have numerous substantial case law indicating that once he's aware of that, he should have at least looked into it and done something about it, and so far as we can tell from the record, he did not. Now, we also have a point with regard to counsel's failure to object ever to his untimely arraignment for a second-degree robbery charge. That second-degree robbery charge was ultimately dismissed as part of the plea bargain. But our point is that it was used as a bargaining chip to induce his no-contest plea. But by virtue of his plea, doesn't he waive that objection? He – The timeliness of it? That was the quid pro quo for his plea, wasn't it? Well – He gets rid of the robbery charge, and – That's normally true, Your Honor. The problem is that – our point is that the ineffective assistance of counsel came in here that the counsel did not take any steps to get this dismissed otherwise than – other than by a plea bargain. I mean, there was a considerable delay before – after his arrest, before this was charged. So there was a possibility that it could have been dismissed on the grounds of delay. But there was never any effort of that kind made. So if it was part of a bargain, our point is it shouldn't have been part of a bargain. It should have been – at least some effort made to dispose of it otherwise. Was the robbery charge pending in the same jurisdiction as the – Yes, in the same jurisdiction, yes. In the same jurisdiction, and – but they didn't file it until about three or four months after the – after the arrest on the principal offense of drugs. If the law is delay in the arraignment or filing of a charge, is that a jurisdictional defect? Well, we do – I do, of course, cite the fact that – The speedy arraignment, or brought before a magistrate and charged. But if they don't – if they aren't, and they don't raise an objection to it, is it – is that a jurisdictional defect in the prosecution? It's probably no jurisdictional defect, Your Honor. Again, it's ineffective assistance of counsel. That's the only issue I've got on this appeal. I mean, that's all I'm even allowed to raise. Well, we understand that you're – Yeah. You're doing a pretty good job with our pretty thin record. You were dealt a weak hand, I guess. This man did not have an attorney until this appeal was underway. And of course – I take it the charge was filed within the California statute of limitation? Sir? The robbery charge had been filed before the California statute of limitation. I think so, Your Honor. I never – I think – I'm sure it was. Now, a couple of other points. There was no independent toxicology testing performed on the alleged heroin. Again, hasn't he waived that by entry of the plea? He waived that. Again, I'm submitting it to IAC. That's all. Counsel, you are out of time.  We noted those issues. All right. Thank you, Your Honor. All right. Good morning, Your Honors. May it please the Court, my name is Robert Kesey. I'm the Deputy Attorney General, and I'm representing Appellee Kerry in this matter. Your Honor, as this Court probably is aware of this case, the petition was filed after the effective date of the Anti-Terrorism and Effective Death Penalty Act, therefore, it is subject to that law. And thus, it's – the State Court has quite a bit of deference in this matter in deciding issues and its decision to reject the IAC claims. Based on that background, Petitioner's IAC claims were correctly rejected by the State Court. First, in my brief, as the Court read, I brought up Toilette. And I believe that because Petitioner pled no contest, because Martin pled no contest, he's waived basically every single IAC claim that he brings up now, other than one going to the voluntary and intelligent character of his guilty plea. And really, arguably, the only one that does so would be his first claim, which is that it was IAC for having – failing to have an expert evaluate his mental health condition. Isn't Mr. McAllister's argument that if his counsel had done something to inquire into some of these issues, that he might very well have taken them off the table? For example, the robbery charge. If there was a legitimate claim to the delay in failing to arraign him, or I guess it would be a prosecutorial delay in filing the charge, I think would have to be the theory, that if he'd been successful in that attack, then that bargaining chip would have been taken off the table and the prosecutor couldn't have used it in order to, in Mr. McAllister's words, coerce the plea out of his client. Isn't that the basis of the theory of ineffective assistance? Well, based on that, if – I'm not sure that that necessarily goes to his voluntariness of the plea, but if the court is looking at broadening voluntariness to failing to interview witnesses, failing to dismiss – attempt to dismiss the robbery, if we're looking at that broad specter, I suppose it could go to voluntariness of the plea. The question is – Well, you don't – you don't dispute that in the context of plea bargaining, there is inherent coercion when one is negotiating with a prosecutor where there are other I mean, I guess it's legalized extortion under Santabello, but, you know, doesn't that go to the voluntariness, at least on ineffective assistance of counsel? I wouldn't exactly characterize it that way, Your Honor. What I would characterize it as is a choice of lesser of two evils. I mean, nobody wants to go to prison for 25 to life, but certainly nobody wants to go to prison for 50 years to life. Whether or not counsel did these things that Petitioner is alleging he should have done, I guess the bottom line is, even getting past Follett and past efficiency, Petitioner hasn't shown any kind of prejudice. There's been no prejudice shown. There's been nothing to show that if counsel had done the things that he had asked counsel to do, that somehow the situation would have changed to the point of him not entering a plea and instead going to trial. There's been no explanation as to a more favorable setting that he would have received based on counsel's omissions, alleged omissions. Was there any explanation of the five-month delay in the time he was incarcerated and the time he entered his plea was sent? The delay in the... Is that in the record, why the five months went by? I think what it was, Your Honor, it was just basically the court process, you know, several appearances, a preliminary hearing, a motion to suppress, and then ultimately the plea in terms of the heroin charge. In terms of the robbery charge as to why there was a delay in filing the case, I don't know. No record. There's no record of that. But on that basis that Petitioner argues that his counsel could have gotten a robbery case dismissed, as I argued in my brief, that's just not the case. Penal Code Section 825, upon which he relies, does not require arraignment within 48 hours when there's a parole hold on other matters. And it appears there was a parole hold on other matters. He was on parole. He got arrested on the health and safety code violation for possessing heroin. So he was in custody on another charge. And my understanding of Penal Code Section 825 is it does not apply in that situation. Regardless, dismissal is not required unless Martin can show that a fair trial caused prejudice in his robbery case, i.e., he couldn't defend it for one reason or the other. And with all that said, certainly the prosecution could have refiled the case, even if it had been dismissed. So the fact that Petitioner argues that it was an illusory bargaining chip is just not the case. It had value. It had a lot of merit. And you really can't fault counsel for advising his client to plead to one strike or to one case, a three-strikes case, rather than two. It seems to be logical for counsel to advise in that, especially when the evidence in the heroin case seemed to be very powerful. It's much better, obviously, to go on 25 years to life on a possession for heroin than 50 years to life on a possession of heroin and a robbery charge. In sum, it appears that Mr. Martin is having some buyers' remorse, wants to retroactively invalidate his voluntary and intelligent plea, and he just can't do that, especially when the plea was based on sound legal advice, as I have stated. And accordingly, the State's court's rejection of Martin's claim was not contrary to or an unreasonable application of clearly established Supreme Court precedent. Thank you. Thank you, Mr. Guzzi. The case just argued is submitted, and we will hear argument in the case of Miller v. The City of North Las Vegas. Thank you.
judges: Goodwin, Hug, Tallman